**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JEFFREY A. CHESAK,

        Plaintiff,

-vs-                                                Case No. 6:06-cv-1491-Orl-31DAB

ORANGE COUNTY GOVERNMENT,

        Defendant.

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 49) and Plaintiff's Response thereto (Doc. 62).

**I. Background[1]**

Plaintiff Jeffrey Chesak ("Chesak") brings this action against his former employer, the Orange County Government ("the County"), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq*. ("the ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Chesak was an employee of the County's Fire Department from January 14, 1986, when he was hired as a firefighter recruit, until he was discharged on March 20, 2006. At the time of his discharge, Chesak was a Lieutenant ("Lt.") in the Planning and Research Bureau of the Fire Administration Division, a position which he had held since July of 2005.

---

[1] The following statement of facts contains those facts that the Court deems material to this motion, presented in the light most favorable to the nonmoving party.

On March 20, 2002, Chesak was diagnosed with Becker's Muscular Dystrophy ("MD"), a genetic condition which is progressive and untreatable. (Doc. 49 at 3-4). At that time, Chesak was an EMS Training Coordinator in the Training Division. On June 12, 2002, Chesak received an annual physical exam from Dr. Sneddon, who indicated that Chesak required some work restrictions at that time. In late 2002, Division Chief Bill Godfrey transferred to the Training Division and requested that Chesak undergo another physical exam. Chesak complied and Dr. Sneddon indicated that Chesak required permanent restrictions due to his medical condition. Chief Joseph Donovan[2] indicated that no changes in Chesak's duties were necessary at that time.

On April 12, 2005, Chesak appeared for an annual physical with Dr. Barry Portnoy, M.D. At the time of his physical, Chesak was asked to take a treadmill stress test. However, because of the weakness in his legs caused by MD, Chesak stated that he could not perform the treadmill stress test. Dr. Portnoy refused Chesak's request to take a "chemical stress test", and after this physical placed Chesak on non-exertional work restrictions pending the completion of the stress test.

Several weeks later, Captain Hall informed Chesak that he was not allowed to continue working in the Training Division unless he was cleared for full duty. Chesak was told that he could work in a temporary modified duty position in the Communications Department while he awaited the completion of his stress test. However, rather than accept this position, Chesak decided to utilize his sick leave on May 17, 2005. On June 7, 2005, Chesak inquired as to why he could not

---

[2]Chief Joseph Donovan is the Battalion Chief of In-Service Training and Officer Development. He directly supervised Chesak while he was working in the Training Division.

remain in the Training Division as he had in the past. He was told that Chief Godfrey had no light duty positions available in the Training Division.[3]

Thereafter, Chesak applied for a position as a Lt. in Planning and Research and was assigned to that position on July 3, 2005. Chesak was hired to replace Lt. Eric Yeardon, who had held the position for five years and was retiring. The primary duties and responsibilities of a Lt. in Planning and Research involved data management.[4] During his 5 years in that position, Lt. Yeardon had never been required to perform combat firefighting duties.

Chesak was ultimately required to submit to a treadmill stress test on October 13, 2005. As expected, Chesak was unable to "pass" the treadmill stress test. On that date, Dr. Portnoy placed Chesak on non-exertional duty restrictions and indicated that the restrictions were permanent because he had failed the stress test due to his chronic medical condition.

On October 14, 2005, Chief Washington[5] advised Chief Godfrey of Chesak's medical restriction indicating that he did not believe the department would be able to accommodate him. That same day, Chesak was told that he would be unable to remain in his position as Lt. in the Planning & Research Bureau because of his permanent medical restrictions. On January 4, 2006, a medical review meeting was held regarding Chesak's medical status.

---

[3]There is no explanation regarding why Chesak could not continue to perform his job with the Training Division as he had over the prior three years, except to say that Chief Godfrey informed him that he had been on "light-duty status" which could not continue indefinitely. (Doc. 49 at 15).

[4]The Informational Bulletin announcing this vacancy, along with a job description, can be found at Plaintiff's Exh. 28.

[5]Chief Washington was the Battalion Chief of the Department of Safety and Wellness.

On January 24, 2006, Chesak sent an email to Chief Matt McGrew asking what specific functions of his job he could not perform. A week later, Chief McGrew responded that it was the County's stance that, regardless of which position he held, he must be able to perform firefighting duties. On January 30, 2006, Chesak received a letter from Chief Godfrey indicating that the decision had been made to "medically separate" his employment effective March 4, 2006.

On March 10, 2006, Chesak was offered, but refused to accept, a civilian position in the Planning & Research Bureau because that position offered lower pay and fewer benefits. Additionally, Chesak had been performing his current job duties for several months, despite his restrictions and disability, without accommodation. On March 20, 2006, Chesak reported to work and was told by Chief Donovan that Deputy Chief James Fitzgerald wanted Chesak to pack his belongings, leave and not return. Before he left, Chesak wrote Chief Fitzgerald a letter regarding the discriminatory issues which he wished to discuss. He received no response to this letter. Then, on September 27, 2006, Plaintiff filed suit in this Court.

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## III. Legal Analysis[6]

The ADA provides, in relevant part, that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "discriminate" to include, in relevant part, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the

---

[6] Defendant argues that, under 42 U.S.C. § 2000e-5(e)(1), any complaint of discrimination that allegedly occurred prior to July 15, 2005 is barred by the statute of limitations. However, it appears that Plaintiff has abandoned such claims as his response to the Motion for Summary Judgment only address discriminatory activities that occurred after that date. (Doc. 62 at 22-25). Therefore, the Court will not address this argument.

operation of [its business]." 42 U.S.C. § 12112(b)(5). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holbrooke v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 (11th Cir. 1997).

Defendant does not dispute that Plaintiff is disabled under 42 U.S.C. § 12102(2). (Doc. 49 at 23, n18). However, Defendant argues that Chesak is not a "qualified individual" under the ADA.

> An individual is "qualified" if [he], with or without reasonable accommodation, can perform the essential functions and job requirements of the position the individual holds. *See* 42 U.S.C. § 12111(8); *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367, 60 L. Ed. 2d 980 (1979). An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer. *See Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996). An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job. *See LaChance*, 146 F.3d at 835 (citing 29 C.F.R. § 1630.2(o)(2)(ii) (1995)).
>
> "Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. *See* 29 C.F.R. § 1630.2(n)(2)(1). In determining what functions are deemed essential, the ADA states "consideration shall be given to the employer's judgment … and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed. *See* 29 C.F.R. § 1630.2(n)(2)(ii); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir.1997).

*Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

It is undisputed that Chesak was incapable of performing combat firefighting functions. The essential inquiry, then, is whether such functions were essential to the position of Lieutenant in Planning and Research. After considering the facts in the light most favorable to the Plaintiff, this Court finds that there is sufficient evidence to conclude that firefighting duties were not an

-6-

essential function of Chesak's position, and that he is a qualified individual under the ADA. In particular, the Court notes that the job description contained with the vacancy announcement did not include firefighting duties. Furthermore, Lt. Yeardon was never required to perform such duties throughout his five years in the same position.

Defendant also argues that Chesak failed to request a reasonable accommodation, and therefore cannot show discriminatory action under the ADA. However, Chesak has presented sufficient evidence from which a jury could find that he could perform the essential functions of his position without any accommodation. Therefore, Defendant is not entitled to summary judgment.

## IV. Conclusion

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 49) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 20, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party